SAMUEL H. COTTRELL & SON v. SMOKELESS FUEL CO.

(Circuit Court, E. D. Virginia. January 16, 1904.)

1. SALES—CONTRACTS—EXCUSES FOR FAILURE TO DELIVER.

Where a contract for the sale of such coal as the buyer might need, approximating 3,000 tons, during the year from April 17, 1902, to April 17, 1903, contained a provision that deliveries should be subject to strikes, accidents, interruptions to transportation, and other causes beyond the seller's control, the existence of a miners' strike did not avoid the contract, but only suspended its operation during such strike.

2. SAME—DAMAGES.

> Where defendants agreed to deliver such coal as plaintiff should need between April 17, 1902, and April 17, 1903, approximating 3,000 tons, in such quantities and at such times as plaintiff should direct, except that deliveries should be subject to strikes, and by reason of a strike deliveries were prevented from June 7, 1902, to March 1, 1903, and plaintiff only demanded two car loads after that date, plaintiff could only recover damages on such amount.

## In Assumpsit for Breach of Contract.

On the 17th day of April, 1902, the Smokeless Fuel Company entered into a contract with S. H. Cottrell & Son, by which the fuel company agreed to furnish and deliver to Cottrell & Son, at Richmond, Va., all of the New River R. O. M. steam coal from Collins Colliery Company, they might need from the 17th of April, 1902, to April 17, 1903, approximating 3,000 tons, more or less, and to ship the same in such quantities and at such times as Cottrell & Son might from time to time direct during the continuance of said contract, at prices therein mentioned, but subject to the following provision: "Deliveries of coal under this contract are subject to strikes, accidents, interruptions to transportation, and other causes beyond the control of the party of the first part [the fuel company], which may delay or prevent shipment." Cottrell & Son called for and received under said contract up to the 10th day of June, 1902, a total of 563 tons, at the price of $2.57 per ton, the contract price. On the 7th day of June, 1902, there was a general strike throughout the mining district, including the mines from which the coal under this contract was to be shipped. From that time on no coal was shipped to Cottrell & Son during the continuance of the contract, though during the pendency of the strike they frequently called for the same; and after it ended, and during the running of the contract, made one request of two car loads of coal, none of which was furnished. This action was brought to recover damages for breach of the contract for failure to furnish the undelivered 2,437 tons of coal thereunder, said damage being estimated on the average of ruling prices for such coal from November, 1902, to April, 1903, which showed a loss to Cottrell & Son of $1.74½ per ton, as they claim, and for which the verdict of the jury was rendered in their favor.

Henry R. Pollard, for plaintiffs.
Sands & Sands, for defendant.

WADDILL, District Judge.   This case is now before the court upon a motion to set aside the verdict of the jury rendered herein on the 2d day of December, 1903, because, among other things, it is contrary to the law and the evidence, and unsupported by the evidence.   After mature consideration of said motion, having carefully reviewed the evidence and heard the arguments of counsel thereon, the conclusion reached by the court is that the verdict rendered in favor of the plaintiffs should be set aside, because the same is unsupported by and contrary to the evidence.   The crucial point involved is whether or not the conditions at the mines of the defendant during the continuance of the contract were such as to relieve it from the obligation of the same under the clause in the agreement known as the "strike clause."   In other respects the facts may be said to support the finding of the jury.   That abnormal conditions prevailed during the fall of 1902 and the winter of 1902–3 is a matter of common knowledge, and forms a part of the history of the times; but reliance need not be had upon this, as the evidence conclusively establishes that from the 7th of June, 1902, certainly for a period of four months, conditions at the mines were such that the ordinary and usual operation of them was out of the question.

Indeed, out of 60 mines in the coal district, comparatively few were operated at all, and those few under the protection of a military force. Normal conditions were not resumed until about the 1st of March, 1903. This is established by the evidence of the plaintiffs' own witness Mr. Morris O. Brooks, a gentleman of intelligence, who had ample opportunity of knowing the conditions existing, and who testified with such frankness, fairness, and clearness, and showed such familiarity with the entire situation, that none could fail to be impressed by his evidence; and as to the conditions mentioned he is fully sustained by the evidence of the defendant company. At an early stage of the strike little or no coal was mined, but the defendant never discontinued work entirely, though conducting its business by means of an armed force, employed as well at the mines as in the effort to transport coal therefrom. The output was comparatively small, and produced at greatly increased expense; so much so that the coal more than doubled in value. Even after the return to normal conditions, the cost of mining and the price of coal were never anything approximating those existing at the time of entering into the contract. The strike clause in the contract was manifestly inserted for the purpose that when conditions existed which placed it beyond the control of the party of the first part to the contract, the defendant here, to carry out the same, it should operate to relieve it from the provisions thereof. That such conditions did exist during the life of this contract which placed the mining and transportation of coal in the usual course of business beyond the defendant's power, is too apparent to admit of serious doubt. Indeed, it is the one thing in which the evidence of the plaintiffs and the defendant concur; and to allow the verdict of the jury to stand based upon the failure of the defendant to furnish coal during the strike would, in effect, be to annul that important qualification and condition in the contract, and to give to it no effect whatever. The language in reference to strikes is: "Deliveries * * * are subject to strikes, accidents, interruptions to transportation, and other causes beyond the control of the party of the first part, which may delay or prevent shipments." The existence of the conditions do not avoid the contract, but only suspend the operation of the same during their pendency, which in this case was from the 7th of June, 1902, to the 1st of March, 1903. For the failure to deliver coal during that period, no recovery should be had, and the plaintiffs can only recover for such coal as they called for under their contract, after the restoration of normal conditions at the mines—that is, after the 1st of March, 1903, to the 17th of April, 1903—which, according to the evidence, consisted of two car loads ordered by the plaintiffs on the 2d of March, 1903.

The court's attention has been called to the case of Hull Coal & Coke Co. v. Empire Coal & Coke Co., 113 Fed. 256, 51 C. C. A. 213, which bears upon the general subject under consideration, but otherwise throws no special light on this case, as the same turns entirely upon the sufficiency of the evidence adduced to support the finding of the jury.

The verdict, as rendered, will therefore be set aside, and a new trial awarded herein.